UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| SHAWON JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-CV-1186 CDP |
| | ) |
| JENNIFER PRICE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Shawon Jones's post-dismissal motion to amend his complaint. [Doc. #29] Because it appears that plaintiff placed his complaint in the prison mail prior to the deadline required for amendment of his pleading, the Court will vacate the Order of Dismissal in this action, reopen the case, and review plaintiff's amended pleading pursuant to 28 U.S.C. § 1915.

**Background**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at Potosi Correctional Center ("PCC"). He filed his original complaint on May 2, 2019. The original complaint numbered fifty-six (56) pages and named twenty-four (24) defendants in this action. On March 24, 2020, the Court reviewed plaintiff's complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915. In a thirty-four (34) page Memorandum and Order, the Court reviewed plaintiff's allegations of excessive force and unlawful conditions of confinement and issued process against five defendants in their individual capacities. [Doc. #9] The remaining claims and defendants were dismissed from this action. [Doc. #10]

1

On May 22, 2020, defendants Jeremiah Kitchell, Jennifer Price, Richard Menteer, Jeff Turner and John-Riley Layton filed through counsel a motion to dismiss plaintiff's complaint, or for more definite statement. On June 12, 2020, the Court ordered plaintiff to respond to defendants' motion to dismiss within twenty-one (21) days. [Doc. #16]

Plaintiff moved for appointment of counsel on June 25, 2020, and he filed a motion for extension of time to amend his complaint on July 1, 2020. Defendants filed an opposition to plaintiff's motion for appointment of counsel but did not oppose plaintiff's motion to amend his complaint. Plaintiff filed a motion to amend his complaint on July 16, 2020. [Doc. #21]

Attached to plaintiff's motion to amend his complaint, filed on July 16, 2020, was a handwritten complaint (not filed on a court-form as required under the Local Rules). Additionally, the amended complaint failed to allege the capacity under which he was suing defendants. Thus, by Memorandum and Order on September 1, 2020, the Court instructed plaintiff that the amended complaint could not be filed as an amended complaint under the Court Rules. Plaintiff was instructed to file a new amended pleading no later than September 22, 2020. On September 1, 2020, the Court additionally denied defendants' motion to dismiss as well as plaintiff's motion for appointment of counsel. [Doc. #22]

When plaintiff failed to file his amended pleading by October 1, 2020, the Court dismissed this action, without prejudice, pursuant to Federal Rule of Civil Procedure 41(b) for failing to comply with a Court Order. [Doc. #28] However, on October 2, 2020, the Court received a motion to amend a complaint from plaintiff that was placed in the prison mailing system by plaintiff on September 16, 2020. [Doc. #29] Because the amended pleading appears to be timely filed, the Court will vacate the Order of Dismissal, reopen this action and submit plaintiff's amended pleading for review pursuant to 28 U.S.C. § 1915.

**Plaintiff's Amended Complaint**

As noted above, plaintiff filed his original complaint against twenty-four (24) defendants. On March 24, 2020, the Court reviewed plaintiff's complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915. In a thirty-four (34) page Memorandum and Order, the Court reviewed plaintiff's allegations of excessive force and unlawful conditions of confinement and issued process against five defendants in their individual capacities: Jennifer Price (Functional Unit Manager); John Doe Menteer (Captain); Jeffrey Turner (CSI); John Dayton Richey (Sergeant, Cell Extraction Team ("CERT Team")); and Jeremiah Kitchell (CERT Team Member). [Doc. #9] The remaining claims and defendants were dismissed from this action. [Doc. #10]

In his amended complaint, filed on October 2, 2020, plaintiff asserts, in a thirty-five (35) page complaint, against five named defendants, that his civil rights have been violated under 42 U.S.C. § 1983. He brings this action against the following defendants relating to circumstances that occurred at Potosi Correctional Center (PCC): Jennifer Price (Functional Unit Manager); Richard Menteer (Captain); John Riley-Layton (Sergeant, Cell Extraction Team ("CERT Team")); Jeff Turner (CSI); and Jeremiah Kitchell (Correctional Officer, CERT Team). Plaintiff sues defendants in their individual capacities only.

Plaintiff claims that he was assaulted by defendant John Riley-Layton and four unnamed correctional officers (part of the Cell Extraction Team) at PCC on March 13, 2018. Plaintiff states that the assault occurred when he was forced from a suicide cell (TCU #5) and placed in cell 2B#6. Plaintiff alleges that an unnamed correctional officer assaulted him in front of defendant Layton. Defendant Layton yelled to plaintiff, "Stop resisting." Plaintiff states that at that time he was not resisting. However, defendant Layton was punching plaintiff in the mouth, which caused plaintiff's

3

gums to bleed. Plaintiff claims he did not receive any medical attention after he was punched by defendant Layton.

Plaintiff asserts that on March 13, 2018, he was placed on Special Security Orders ("SSOs") by defendants Jennifer Price, his Functional Unit Manager, defendant Richard Menteer, his Captain, defendant Jeff Turner (CSI).[1] He states that the SSOs, themselves, were "atypical and significant" to regular and everyday prison conditions and violated his First, Eighth, Fourteenth and Fifth Amendment rights, depriving him of "[adequate] living conditions, clothing, furnishings, mail, visitation, food, access to law library, access to courts and practicing of religion." His assertions are made in a conclusory manner, as plaintiff does not describe the factual underpinnings relating to these alleged deprivations.

Plaintiff states that between March 13, 2018 and April 18, 2018, pursuant to the SSOs, plaintiff was allowed only one pair of boxers. He asserts that after April 18, 2018, he was given a t-shirt. However, during the approximately one-month time-period, he was not given or offered a toothbrush, toothpaste or a shower. Also, his cell was kept bare. Plaintiff does not indicate, however, whether he had other toiletry items or whether he had a bed in his cell or blankets or sheets. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 928 (8th Cir. 2005) (the filing of an amended complaint completely replaces the previous complaint and claims not realleged are deemed abandoned).

Plaintiff asserts that during the time period that the SSOs were kept in place, until approximately July 18, 2018, he additionally was deprived of the law library, and the SSOs dictated that he could not possess paper or writing utensils. Plaintiff states that these restrictions necessarily

---

[1] Plaintiff also alleges that defendant Turner should be held liable for never "intervening" and attempting to change the SSOs.

denied him access to the courts. He states he was also denied access to his religion, because he was not allowed access to the Quran, nor was he able to groom himself before or after prayers.

Plaintiff asserts that he was assaulted by defendant Jeremiah Kitchell when Kitchell and a five-man extraction team removed him from his cell in 2B#6 on April 13, 2018. Plaintiff claims that Kitchell initiated the action upon plaintiff when Kitchell was half-way through the cell by throwing overhand punches and "attacking" plaintiff. He claims that once all five members of the extraction team were inside the cell, the attack got worse, because once plaintiff was on the ground, "there were punches, kicks, knees and stomping going on." Plaintiff does not indicate who was punching him, kicking him or stomping on him at that time.

Plaintiff alleges that he suffered several injuries as a result of the assault on April 13, 2018, including a busted mouth and lips, a busted and bleeding nose, a lacerated left ear and swollen face. Plaintiff asserts that the removal from his cell was not done in a "good faith effort to restore discipline" but instead done "to maliciously and sadistically cause harm." Plaintiff indicates that he received medical care after this alleged altercation.

Plaintiff seeks compensatory and punitive damages in this action.

**Legal Standard on Initial Review**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams,* 490 U.S. 319, 328 (1989); *Denton v. Hernandez,* 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes,* 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir.

1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

**Discussion**

**A. Access to Courts Claim/Access to Law Library**

Plaintiff alleges that his access to courts and the law library, as well as paper and stamps, were withheld between March 13, 2018 and July 18, 2018. He asserts that during this time he was also denied legal materials. However, plaintiff does not state exactly what "legal materials" he was denied. Plaintiff claims that additionally, his mail was withheld during this time period, and it was later provided to him after he came off of the Special Security Orders. Plaintiff does not designate whether his mail claim refers to regular or legal mail.

Plaintiff's claims arise under the First Amendment, which guarantees inmates the right to send and receive mail. *Turner v. Safely,* 482 U.S. 78, 89 (1987), *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). To state a facially-plausible claim, a plaintiff must plead facts permitting the reasonable inference that the defendant is liable for the misconduct alleged, *Iqbal,* 556 U.S. at 678, and to raise the right to relief above the speculative level. *Twombly,* 550 U.S. at 555.

As noted above, plaintiff's allegations are made up of one conclusory statement, wherein he notes he was denied "[adequate] living conditions, clothing, furnishings, mail, visitation, food, access to law library, access to courts and practicing of religion." Regarding his denial of mail and access to courts, plaintiff merely states that while he was on Special Security Orders he was deprived of mail and access to courts and the law library. Plaintiff has not indicated who purportedly deprived him of mail, access to courts and/or visits to the law library, blaming it only on the Special Security Orders, which he states were implemented by defendants Jennifer Price, his Functional Unit Manager, defendant Richard Menteer, his Captain, defendant Jeff Turner (CSI).[2]

The Court is not required to accept such conclusory allegations as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Additionally, plaintiff offers no allegations tending to establish he suffered an "actual injury" as required to state a plausible claim premised upon his right of access to the courts and/or access to the law library. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996), *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam).

---

[2]Plaintiff also alleges that defendant Turner should be held liable for never "intervening" and attempting to change the SSOs.

Even if it could be said that plaintiff's factual allegations permitted the inference that multiple prison officials were liable for not always delivering all of his mail, plaintiff's allegations establish only sporadic disruptions that are not the result of content-based prison regulations or practices, allegations that are insufficient to support a First Amendment claim. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays and disruptions are insufficient to state a cause of action grounded upon the First Amendment"); *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999) (allegations of sporadic and short-term disruptions in mail that are not the result of a content-based prison regulation or practice do not state a First Amendment claim); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (to state a claim under the First Amendment, a plaintiff must show a regular and unjustifiable interference with mail).

To the extent plaintiff can be understood to claim he was wrongfully denied mail privileges during the approximate month he was held on suicide watch and administrative segregation (from March to April), such allegations do not establish a constitutionally-protected liberty interest as necessary to state a cognizable due process claim. *See Kennedy v. Blankenship,* 100 F.3d 640, 642-43 (8th Cir. 1996) (no "liberty interest" implicated by thirty days in punitive isolation that included suspension of mail privileges), *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (a due process claim is cognizable only if the plaintiff identifies a constitutionally-protected liberty or property interest). Even if he is asserting that the limitations lasted longer, through the middle of July 2018, the Court notes that a prisoner's First Amendment right to send and receive mail may be limited by legitimate penological interests. *Turner*, 482 U.S. at 89.

Finally, plaintiff does not allege that any named defendant was personally involved in or directly responsible for the alleged mail interference. Rather, plaintiff merely states that the SSOs

8

were put into place by three defendants, Jennifer Price, Richard Menteer, and Jeff Turner. However, he does not indicate that these individuals were the ones who were responsible for denying him mail and access to the library on a day to day basis during a several month period. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where the plaintiff failed to allege that a defendant was personally involved in or directly responsible for incidents that injured him).

Supervisors, or administrators like Price, Menteer and Turner, cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal*, 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the amended complaint must allege adequately that the defendants acted with such impermissible purpose, not merely that they knew of a subordinate's motive. *Id.* Conversely, plaintiff could have also alleged that a defendant subordinate was carrying out a directive from Price, Menteer and Turner that was unlawful. However, in this case, plaintiff has failed to identify the defendant subordinate who purportedly failed to carry out the unlawful directive.

### B. Excessive Force Claim on March 13, 2018

Plaintiff claims that he was assaulted by defendant John Riley-Layton and four unnamed correctional officers (part of the Cell Extraction Team) at PCC on March 13, 2018. Plaintiff states that the assault occurred when he was forced from a suicide cell (TCU #5) and placed in cell 2B#6. Plaintiff alleges that an unnamed correctional officer assaulted him in front of defendant Layton. Defendant Layton yelled to plaintiff, "Stop resisting." Plaintiff states that at that time he was not

9

resisting. However, defendant Layton was punching plaintiff in the mouth, which caused plaintiff's gums to bleed. Plaintiff claims he did not receive any medical attention after he was punched by defendant Layton.³ Plaintiff sues defendant Layton in his individual capacity.

"'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In the context of a prisoner's Eighth Amendment claim against a prison guard for the use of excessive force, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6.

While an inmate need not have suffered a serious injury to maintain an Eighth Amendment claim, the extent of the injury is one factor to be considered in determining whether the use of force was wanton and unnecessary. *Id.* Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Id.* at 9 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973) ("not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The "Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10.

Plaintiff alleges he suffered injuries to his mouth because of being punched by defendant Layton, which plaintiff states was done when he was not resisting. From the facts as alleged, which

---

³Although plaintiff states that he did not receive medical treatment as a result of this incident, he does not appear to be bringing a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment relative to this incident.

10

the Court must take as true, the Court will issue process on plaintiff's claims of excessive force against defendant Layton, in his individual capacity, for purported violations of the Eighth Amendment.

### C. Excessive Force Claim on April 13, 2018

Plaintiff asserts that he was assaulted by defendant Jeremiah Kitchell when Kitchell and a five-man extraction team removed him from his cell in 2B#6 on April 13, 2018. Plaintiff claims that Kitchell initiated the action upon plaintiff when Kitchell was half-way through the cell by throwing overhand punches and "attacking" plaintiff. He claims that once all five members of the extraction team were inside the cell, the attack got worse, because once plaintiff was on the ground, "there were punches, kicks, knees and stomping going on." Plaintiff does not indicate who was punching him, kicking him or stomping on him at that time; however, he has alleged enough in his amended complaint to assert that defendant Kitchell attacked him in an unprovoked manner. He sues defendant Kitchell in his individual capacity.

Plaintiff alleges that he suffered several injuries as a result of the assault on April 13, 2018, including a busted mouth and lips, a busted and bleeding nose, a lacerated left ear and swollen face. Plaintiff asserts that the removal from his cell was not done in a "good faith effort to restore discipline" but instead done "to maliciously and sadistically cause harm."

From the facts as alleged, the Court will issue process on plaintiff's claims of excessive force against defendant Kitchell, in his individual capacity, for purported violations of the Eighth Amendment.

### D. Procedural Due Process Claims

The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate

11

in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 4 72, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Therefore, in the case at bar, this Court needs reach the question of what process was due only if plaintiff's allegations demonstrate that his placement in disciplinary segregation, administrative segregation, and his temporary visitation created an atypical and significant hardship under *Sandin. See Beaulieu,* 690 F.3d at 1047.

Regarding his placement in administrative segregation, plaintiff asserts that between March 13, 2018 and July 18, 2018 he was placed on SSOs by Jennifer Price, Richard Menteer and Jeff Turner. He states in a conclusory manner that the SSOs, themselves, were "atypical and significant" to regular and everyday prison conditions and violated his First, Eighth, Fourteenth and Fifth Amendment rights, depriving him of "[adequate] living conditions, clothing, furnishings, mail, visitation, food, access to law library, access to courts and practicing of religion."

He states that between March 13, 2018 and April 18, 2018, pursuant to the SSOs, he was allowed only one pair of boxers. He asserts that after April 18, 2018, he was given a t-shirt. However, during the approximately one-month time-period, he was not given or offered a toothbrush, toothpaste or a shower.[4]

Placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin.* To state a claim under § 1983 for unconstitutional placement in

---

[4] Plaintiff has not indicated in his factual allegations whether he asked for toothpaste and a toothbrush. In his prior complaint, plaintiff alleged that he was given a t-shirt, socks and boxers, but it was later taken by defendant Menteer at an unspecified time when he was on suicide watch. He further alleged that he had a toothbrush and toothpaste in April 2018, under orders by Jennifer Price. The Court takes judicial notice of these factual allegations from his prior complaint.

administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips*, 320 F.3d at 847.

Plaintiff has not indicated how many t-shirts and boxers he was assigned in the general population, nor has he indicated how often he could shower during his stay in general population. Thus, the Court is unable to determine the difference between his new stay in administrative segregation and the conditions in general population in order to determine what counts as an atypical or significant hardship.

Additionally, although plaintiff has indicated the three persons who were responsible for originally implementing the SSOs, he has not named the defendant responsible for the conditions in administrative segregation. For example, plaintiff has not indicated if he asked a particular defendant for additional shower time and was refused or if he sought additional clothing from a defendant and he was told that as a result of the SSOs he could not receive additional clothing. For these reasons the Court is unable to state that plaintiff has alleged a procedural due process claim relative to his stay in administrative confinement in April 2018.

### E. Religious Discrimination Claim

Plaintiff asserts that as part of the SSOs he was deprived of ". . .practicing of religion." Plaintiff claims that he is a practicing Muslim, following the Islamic faith. He states that he was not allowed access to the Quran, nor was he able to groom himself before or after prayers while held under SSOs.

Plaintiff has not indicated whether he is bringing his claim pursuant to the First Amendment or pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc, *et seq.*

While prisoners retain their constitutional rights, they are subject to limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir.), *cert. denied*, 543 U.S. 991 (2004). An inmate's constitutional claims are evaluated under a lesser standard of scrutiny, even though such claims would receive strict scrutiny analysis if brought by a member of the general population. *Id.* "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d at 987 (8th Cir. 2004).

To the extent plaintiff is pursuing claims against defendants pursuant to RLUIPA, those claims will be dismissed, because RLUIPA only allows claims against prison authorities in their official capacities. *See Van Wyhe v. Reisch,* 581 F.3d 639, 646 (8th Cir. 2009); *Blake v. Cooper,* 2013 WL 523710, *1 (W.D. Mo. Feb. 12, 2013).

To the extent he is seeking damages under the First Amendment for the failure of prison authorities to both provide him with his Quran and for failing to allow him to groom himself before or after prayers, the Court must dismiss these claims as well. Plaintiff has failed to allege exactly which of the defendants failed to provide him with the Quran when he asked for it. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where the plaintiff failed to allege that a defendant was personally involved in or directly responsible for incidents that injured him). Plaintiff cannot simply assert that he was not provided a Quran during

the time period he was on SSOs and blame the three defendants who implemented the SSOs. He must indicate who he asked for a Quran and which defendant denied his request.

Similarly, in order to state a claim for a denial of his religious request under the First Amendment, he must allege who he asked to accommodate his grooming request and which defendant denied the request. Plaintiff has failed to do so. Therefore, his religious accommodation claims are subject to dismissal.

**F. Conditions of Confinement Claims**

As noted above, plaintiff asserts that between March 13, 2018 and April 18, 2018 he was placed on SSOs by Jennifer Price, Richard Menteer and Jeff Turner. He states in a conclusory manner that the SSOs, themselves, were "atypical and significant" to regular and everyday prison conditions and violated his constitutional rights depriving him of "[adequate] living conditions, clothing, furnishings, mail, visitation, food, access to law library, access to courts and practicing of religion."

He states that between March 13, 2018 and April 18, 2018, pursuant to the SSOs, he was allowed only one pair of boxers. He asserts that after April 18, 2018, he was given a t-shirt. However, during the approximately one-month time-period, he was not given or offered a toothbrush, toothpaste or a shower.

As noted above, plaintiff has not indicated in his factual allegations whether he asked for toothpaste and a toothbrush. In his prior complaint, plaintiff alleged that he was given a t-shirt, socks and boxers, but it was later taken by defendant Menteer at an unspecified time when he was on suicide watch. He further alleged that he had a toothbrush and toothpaste in April 2018, under orders by Jennifer Price. The Court takes judicial notice of these factual allegations from his prior complaint.

15

The Supreme Court has stated that the "Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 492 U.S. 337, 349 (1981), and that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of a § 1983 conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Although the Constitution does not mandate comfortable prisons, inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994) (internal quotation and citations omitted). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991)). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* (quoting *Wilson*, 501 U.S. at 305). "Conditions, such as a filthy cell, may be 'tolerable for a few days and intolerably cruel for weeks or months.'" *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)).

To state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must show that the alleged deprivations denied him the minimal civilized measure of life's necessities and that defendants were deliberately indifferent to excessive risk to his health or safety. *E.g., Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995) ("Eighth Amendment does not absolutely bar placing an inmate in a cell without clothes or bedding.").

Liberally construing plaintiff's complaint, the Court cannot find that plaintiff has stated an Eighth Amendment claim against defendants Richard Menteer, Jennifer Price and Jeff Turner, the

persons he alleges signed the security orders relative to his claims regarding his toothbrush and toothpaste, as well as his boxers/t-shirt and limited showers.

In his prior complaint, plaintiff alleges that he was given a toothbrush and toothpaste, and he also stated he was given boxers, socks and a t-shirt. Even assuming he wasn't allowed to shower for a month, this, by itself, cannot suffice to form a condition of confinement claim under the Eighth Amendment. As such, this claim is subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that the Order of Dismissal entered on October 1, 2020 is **VACATED** in accordance with the Memorandum and Order entered this date.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **REOPEN** this matter and submit the matter for review pursuant to 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file an amended complaint [Doc. #29] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Order of Dismissal entered on October 1, 2020 is **VACATED**.

**IT IS FURTHER ORDERED** that the Clerk shall **REOPEN** the present action and docket plaintiff's amended complaint attached to Docket No. 29.

**IT IS FURTHER ORDERED** that the Court shall issue process or cause process to issue on plaintiff's claims in his amended complaint against defendant John Riley-Layton in his individual capacity for excessive force on March 13, 2018 in violation of the Eighth Amendment.

**IT IS FURTHER ORDERED** that the Court shall issue process or cause process to issue on plaintiff's claims in his amended complaint against defendant Jeremiah Kitchell in his individual capacity for excessive force on April 13, 2018 in violation of the Eighth Amendment.

**IT IS FURTHER ORDERED** that plaintiff's claims for access to courts and access to the law library in violation of the First Amendment are **DENIED AND DISMISSED** pursuant to 28 § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's procedural due process claims brought pursuant to the Fourteenth Amendment are **DENIED AND DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims for religious discrimination in his amended complaint are **DENIED AND DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims for unlawful conditions of confinement brought pursuant to the Eighth Amendment are **DENIED AND DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that all claims against defendants Richard Menteer, Jennifer Price and Jeff Turner are **DENIED AND DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that defendants Jeremiah Kitchell and John-Riley Layton shall file an answer to plaintiff's amended complaint no later than twenty-one (21) days from the date of this Memorandum and Order.

A separate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 24th day of June, 2021.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE